## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHANTAL CARROZZA, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>MCKENZIE BREW HOUSE, INC.; MCKBH, INC.; BKBC, INC.; WILLIAM MANGAN; and DOE DEFENDANTS 1-10,<br><br>      Defendants. | Civil Action No.: 2:22-cv-3291<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Chantal Carrozza ("Carrozza" or "Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

### <u>INTRODUCTION</u>

1. This is a class and collective action brought on behalf of "Tipped Employees" (defined herein) who work or have worked at restaurants operating under the trade name McKenzie Brew House ("MCKBH") and Will and Bill's Brewery and Restaurant ("Will and Bill's") (together the "Restaurants") that are or were owned and operated and/or managed by Defendants William Mangan ("Mangan") and McKenzie Brew House, Inc., MCKBH, Inc., BKBC, Inc. (collectively the "Corp. Defendants" and together with Mangan "Defendants") and have been subject to the unlawful practices detailed herein.

2. Upon information and belief, Defendants own and operate approximately three Restaurants in the Commonwealth of Pennsylvania.

3. Per the Defendants' website, Defendants operate 2 McKenzie Brewhouse locations - one in Chadds Ford (located at 451 Wilmington West Chester Pike in Glen Mills) and another in

Malvern (located at 240 Lancaster Avenue in Malvern). *See* https://www.mckenziebrewhouse.com/ (last visited June 21, 2022).

4.     Up until sometime in late 2021, Defendants operated a third McKenzie Brewhouse location in Berwyn, Pennsylvania (located at 324 W. Swedesford Rd). Defendants have renamed that location Will's & Bill's Brewery and Restaurant. Upon information and belief, the specific entity that was the registered corporate owner of the McKenzie Brewhouse in Berwyn (BKBC) is the same listed owner of the Will's & Bill's Brewery and Restaurant.

5.     As detailed below, Defendants effectively function as a single integrated enterprise in operating the Restaurants.

6.     Upon information and belief, each of the Restaurants share common ownership and employment policies, including those relating to the compensation of Tipped Employees.

7.     As such, upon information and belief, the employment practices complained of herein were applicable to all Tipped Employees, as Defendants utilized common labor policies and practices.  Accordingly, Defendants are responsible for the employment and compensation practices at issue.

8.     Defendants employ individuals as "servers" ("waiters" and "waitresses"), bartenders, food runners, and bussers (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.

9.     As explained in detail below, Defendants systematically and willfully deprived Plaintiff and Tipped Employees of minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, and the Pennsylvania Wage Payment Collection Law ("WPCL"), 43 P.S. §

260.1, *et seq.*, by, among other things, failing to satisfy the notice requirements of the tip credit provisions of the FLSA and PMWA.

10.     Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit", Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees, thus paying them less than the mandated minimum wage.

11.     In addition, Defendants also violated applicable wage laws by enforcing a policy or practice of paying Tipped Employees only the tip-credit cash wage when (i) those employees were required to perform non-tipped work that was *unrelated* to their tipped occupation and/or (ii) spent in excess of 20% of their time performing non-tipped work that was *related* to their tipped occupation.

12.     As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

## **SUMMARY OF CLAIMS**

13.     Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

14.     In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendants in the United States within the statutory period covered by this Complaint, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

15.    In addition, Plaintiff also brings this action as a state-wide class action to recover unpaid wages, and failing to pay the applicable minimum wage, pursuant to the PMWA and the WPCL (collectively, the "PA State Laws").

16.    Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

17.    The Collective Class and PA Class are hereafter collectively referred to as the "Classes."

18.    Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law; (ii) entitled to unpaid minimum wages from Defendants for hours worked performing unrelated duties to their direct customer service duties; (iii) entitled to unpaid minimum wages from Defendants for hours worked where they spent in excess of 20% of their time performing non-tipped work that was *related* to their tipped occupation; and (iv) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

19.    Plaintiff alleges on behalf of the PA Class that Defendants violated the PA State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked. In addition, Defendants also violated the PMWA by failing to pay the PA Class members the full minimum wage for time spent performing non-tip generating work

## PARTIES

20.     Plaintiff Chantal Carrozza ("Plaintiff") is a resident of the Commonwealth of Pennsylvania who was employed by Defendants as a "bartender" in the Commonwealth of Pennsylvania. While employed as a Tipped Employee, Defendant failed to compensate Plaintiff properly for all hours worked.

21.     Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action. Her executed Consent To Sue form is attached hereto as Exhibit A.

22.     Defendant MCKBH, Inc. is a corporation registered to do business in the Commonwealth of Pennsylvania with its registered address at 240 Lancaster Ave, Malvern, PA. Upon information and belief, MCKBH, is used by Defendants as a conduit to manage and/or operate a McKenzie Brew House at the same location. At all relevant times during the statutory period covered by this Complaint, Defendant MCKBH, Inc. has transacted business within the Commonwealth of Pennsylvania, including within this district.

23.     Defendant McKenzie Brew House, Inc. is a corporation registered to do business in the Commonwealth of Pennsylvania with its registered address at 451 Wilmington-West Chester Pike, Glen Mills PA. Upon information and belief, McKenzie Brew House, Inc., is used by Defendants as a conduit to manage and/or operate a McKenzie Brew House at the same location. At all relevant times during the statutory period covered by this Complaint, Defendant McKenzie Brew House, Inc. has transacted business within the Commonwealth of Pennsylvania, including within this district

24.     Defendant BKBC, Inc is a corporation registered to do business in the Commonwealth of Pennsylvania with its registered address at 100 Four Falls, Suite 515, Conshohocken PA 19428. Upon information and belief, BKBC, was used by Defendants as a

conduit to manage and/or operate a McKenzie Brew House at 324 Swedesford Rd, Berwyn, PA 19312 until sometime in late 2021. After that point, Defendant BKBK, Inc., opened a new Restaurant – Will & Bill's Brewery and Restaurant. At all relevant times during the statutory period covered by this Complaint, Defendant BKBC has transacted business within the Commonwealth of Pennsylvania, including within this district.

25.     Upon information and belief, Defendant William Mangan is a resident of the Commonwealth of Pennsylvania. Upon information and belief, Defendant Mangan is also the President, Manager or otherwise primary shareholder of each of the Defendants: McKenzie Brewhouse, Inc. MCKBH, Inc. and BKBC, Inc.

26.     At all times material hereto, upon information and belief, William Mangan, due to his position as an officer and majority owner of the Corp, Defendants, regularly held and exercised the authority to: (a) hire and fire employees of the Restaurants; and (b) control the finances and operations of the Restaurants.

27.     In his capacity as owner and operator of the Corp. Defendants, Defendant Mangan exercises sufficient control over the labor policies and practices of the Breweries complained of herein to be considered the employer of Plaintiff and the Classes for the purposes of the FLSA and PA State Laws.

28.     Defendants are a single integrated enterprise with a high degree of interrelated and unified operations, sharing a common officer. Each of these Defendants share the common labor policies and practices complained of herein.

29.     Upon information and belief, the sole reason for separate corporate entities was to limit the liability of Defendants.

30.     At all relevant times during the statutory period covered by this Complaint, Defendants, through their actions as an integrated enterprise, have transacted business within the Commonwealth of Pennsylvania, including within this district.

31.     Defendants are engaged in related activities, *e.g.*, activities which are necessary to the operation and maintenance of the Breweries in the Commonwealth of Pennsylvania.

32.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship. Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each of the defendants.

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

34.     Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

35.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

36.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

37.     The crux of the FLSA and PA State Laws is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

38.     Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

39.     Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendants.

40.     Defendants govern and administer each restaurant location in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the restaurant location that a customer may visit.

41.     Upon information and belief, Defendants' restaurants operate under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

### PLAINTIFF'S EXPERIENCE WORKING FOR DEFENDANTS

42.     As set forth above, Plaintiff was employed by Defendants as a "bartender" in their Glenn Mills Restaurant location in the Commonwealth of Pennsylvania. Plaintiff began working at this location from on or around early May 2022. She left Defendants' employ on or about June 25, 2022.

43.     In addition to working as a bartender behind the restaurant's main bar, Plaintiff also worked banquets for Defendants in their banquet room as a bartender.

44.     During her training shifts, Plaintiff was paid the minimum wage of $7.25 per hour.

45.     After completing the training (which lasted approximately three shifts), Plaintiff was paid an hourly cash wage of $2.84 from Defendants and earned tips from customers who chose to leave her a gratuity.

46.     Plaintiff does not ever recall her hourly wage being raised above $2.84 for any day she worked for Defendants, irrespective of the amount of tips she earned or the type of work she performed.

47.     Plaintiff was paid her cash wage by Defendants on a bi-weekly basis. She received her credit card tips from Defendants on a weekly basis from the restaurant's petty cash checking account. *See, e.g.,* Exhibit B (check to Plaintiff for "tips" dated May 24, 2022 and drawn upon Defendants' "Petty Cash Account").

48.     During her employment with Defendants, Plaintiff typically worked Thursday, Friday, Saturday, and Sundays.

49.     On Thursdays and Fridays, Plaintiff typically arrived at work at around 4:00 p.m. and left work at approximately 10:00 p.m. or later. On these days, when Plaintiff arrived the Restaurant was already open to the public.

50.     On Saturdays and Sundays, Plaintiff typically arrived at work at around 11:00 a.m. and helped set up the restaurant, which did not open to the public until 11:30 a.m. On most Saturdays, Plaintiff worked a double shift and did not typically leave until 10:00-10:30 p.m. (or later). On Sundays, depending on how busy the restaurant was, Plaintiff would typically leave anywhere between 5:00 p.m. and 8:00 p.m.

51.     On Saturdays and Sundays, because she was assisting in setting up the restaurant, Plaintiff would typically spend approximately one (1) hour doing prep work before the restaurant opened to the public and afterwards when it was slow.

52.     This prep work included cutting fruit, carrying ice from the back to the bar area, ensuring glasses were prepped, silverware was stocked, menus were cleaned and stocked, beer and liquor was stocked, and the trash was emptied.

53.     Although Plaintiff was not a designated "closer" at the Restaurant for any of the four days she typically worked, she was still required to perform closing work prior to leaving. This work included: cleaning up the fruit and ensuring it was stored properly, table clothes were removed and ready for pickup by the cleaning company, trash was taken out, the bar area was swept, behind the bar was moped, and the bar itself was cleaned and wiped down. Plaintiff estimates this work took, on average, approximately 30 minutes.

54.     On those occasions when Plaintiff was working a banquet, she would spend approximately 2 hours before the banquet started helping set up the banquet room. Some of the tasks she performed during this time included, among other things: putting table clothes down on the tables, putting down chairs, arranging tables to conform to the banquet's specifications, cutting fruit for the banquet bar, stocking wine and bottled beverages in the banquet bar, stocking liquor and ensuring the proper number of bottle back-ups were stocked, and obtaining and setting up the appropriate glassware for the banquet's specifications.

55.     After the banquet was over, Plaintiff performed the following tasks: cleaning up the fruit and putting it away, removing the table clothes and getting them ready for pickup by the cleaning company, trash was taken out, the bar area was swept, behind the bar was moped, and the bar itself was cleaned and wiped down. Plaintiff estimates this work took, on average, approximately 30 minutes.

56.     When Plaintiff worked a banquet, she was told by management that she would receive part of the service charge that was billed to the customer. She was also told that the service charge was split with kitchen staff and the banquet coordinator, among others.

57.    Upon information and belief, Plaintiff does not believe that the service charge was made part of Defendants' gross receipts as Plaintiff was paid her portion of the service charge out of Defendants' petty cash checking account.

58.    Plaintiff recorded his work time by logging into Defendants' timekeeping system through the point-of-sale ("POS") system.

59.    The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

60.    Plaintiff believes that the compensation and work policies described herein applied to both her and all the other Tipped Employees as, at no time, was she informed that a policy was unique to her. Rather, she was constantly told that a particular policy or practice was simply the way things were done.

## THE TIP CREDIT PROVISION & REQUIREMENTS

### *FLSA Requirements*

61.    Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants initially chose to take a tip credit and pay these employees less than the applicable minimum wage.

62.    Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the tip credit wage paid by the employer equals at least the applicable minimum wage.

63.    The applicable requirements for an employer to claim a tip credit under federal law are set forth in 29 C.F.R. § 531.59.

64.    The Department of Labor ("DOL") has set forth these requirements in an easy to ready Fact Sheet, specifically Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15").

65.    Fact Sheet #15 specifically states that:

the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

66.    As is made plain in both 29 C.F.R. § 531.59 and Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

67.    First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

68.    Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit. In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

69.    Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee. In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

70.    Indeed, the Regulation specifically states: "If the employee received less than the maximum tip credit amount in tips, the employer is required to pay the balance so that the

employee receives at least the minimum wage with the defined combination of wages and tips." 29 C.F.R. § 531.59(b).[1]

71.    Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

72.    Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

73.    An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage. If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

74.    In addition, for any "service fee" or "service charge" to count against Defendants' minimum wage obligations, it must be paid by the employer to the employee. *See* 29 C.F.R.§ 531.55. "Service fees" or "service charges" cannot, however, be used to satisfy the tip credit. *Id.*

75.    In addition, courts have required that the "service fee" amounts be included in the establishment's gross receipts.

76.    Upon information and belief, the service fees were improperly included as tips against Defendants' tip credit obligations and/or were not included in the Corp. Defendants' gross receipts.

---

[1] For example, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

77.     As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

***Pennsylvania's Requirements***

78.     Pennsylvania state law has a substantially similar requirement to the FLSA's tip notification requirements. *See* 43 P.S. § 333.103(d).

79.     Importantly, however, Pennsylvania mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour. Thus, under Pennsylvania law, the maximum tip credit is $4.42 per hour.[2]

80.     In addition, 34 Pa. Code § 231.34 also requires employers to maintain payroll records that contain the following information:

(1)     A symbol or letter placed on the pay records identifying each employee whose wage is determined in part by tips;

(2)     Weekly or monthly amount reported by the employee, to the employer, of tips received. This may consist of reports made by the employees to the employer on IRS Form 4070;

(3)     Amount by which the wages of each tipped employee have been deemed to be increased by tips, as determined by the employer, not in excess of 45% of the applicable statutory minimum wage until January 1, 1980 and thereafter 40% of the applicable statutory minimum wage. The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week;

---

[2] Like the FLSA, Pennsylvania law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee. *See* 43 P.S. § 333.103(d).

(4)     Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours; and

(5)     Hours worked each workday in occupations in which the employee received tips and total daily or weekly straight-time earnings for the hours.

**DEFENDANTS' FAILURE TO NOTIFY TIPPED EMPLOYEES**

81.     As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

82.     Rather than comply with the notification requirements set forth in Fact Sheet #15 and the applicable regulations, Defendants chose to simply pay their Tipped Employees a subminimum wage (in Plaintiff's case, $2.84 per hour).

83.     In addition, based on the Plaintiff's paystub it appears that Defendants failed to ensure their employees earned the mandated minimum wage with their tips. *See* Exhibit C (paystub for the pay date of May 14, 2022).

84.     Indeed, as set forth in Exhibit C, Plaintiff worked 40.22 hours during that two-week period and was paid $281.46 (inclusive of $72 in reported tips). *See* Exhibit C. This amounts to an hourly wage of $7.00 per hour – well below the mandated state and federal minimum wage of $7.25 per hour.

85.     The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, including paying employees for all hours worked, that employer forfeits the tip credit and must pay the employee the full minimum wage.

86.     To the best of Plaintiff's recollection, when she was hired, she recalls only being told that she would be paid bi-weekly and what the cash wage from Defendants would be.

87.     Moreover, Defendants cannot credibly claim compliance with the tip credit provisions as Plaintiff was paid less than the mandated minimum wage. These policies/practices are in clear contravention of the strict mandates of the tip credit provisions.

88.     In addition, Defendants never provided written notice whenever the amount of the tip credit Defendants claimed changed. This was in contravention of applicable regulations, including 29 C.F.R. § 516.28(A)(3).

89.     Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing whenever the tip credit claimed by Defendants changed.

90.     Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing of the hours worked where the Tipped Employee did not receive tips. Rather, Defendants simply claimed a tip credit for all hours worked by Plaintiff and other Tipped Employees after said individuals completed their training.

91.     Plaintiff alleges that each of the above actions was done willfully by Defendants.

**DEFENDANTS' POLICIES/PRACTICES FOR UNRELATED/EXCESSIVE SIDE WORK**

92.     The FLSA and PMWA recognize that individuals employed in tipped occupations, such as the Tipped Employees here, often *engage* in more than one *occupation* -- one where the tipped employee customarily receives tips and one where the tipped employee does not.

93.     Indeed, applicable FLSA regulations, specifically 29 C.F.R. § 531.56, provides that when a tipped employee is employed in "dual jobs", one where he/she would customarily receive a tip and one where he/she would not, the employer is not entitled to take the tip credit for time spent engaged in the non-tipped occupation. *See* 29 C.F.R. § 531.56.

16

94.     As Plaintiff's experience makes plain, Defendants required Tipped Employees to regularly perform non-tip generating work including, but not limited to, taking out the trash, gathering tablecloths and preparing them for pick up, and rolling silverware.

95.     Despite performing such work that does not customarily receive a tip (as none could be generated due to the restaurant being closed to the public), Defendants nonetheless took a tip credit for such time.

96.     In addition, Defendants also violated applicable wage and hour laws by enforcing a policy or practice of requiring Tipped Employees to perform non-tipped work that, even if it was related to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks.

97.     Indeed, based on her job duties detailed above, Plaintiff estimates that she regularly spent in excess of 20% of her time performing "side work" while on duty as a server.  The precise amount of this side work, Plaintiff believes can be determined through a review of Defendants' time records for Plaintiff and the sales receipts associated with Plaintiff for each day worked.

98.     Despite this excessive amount of "side work," Plaintiff never recalls her hourly wage being raised to the full minimum wage to account for such time performing said excessive side work.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

99.     Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act. Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under the PA State Laws.

100.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b). The claims brought pursuant to the PA State Laws may be pursued

by all similarly-situated persons who do not opt-out of the PA Class pursuant to Fed. R. Civ. P. 23.

101.     Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over 30 individuals in each of the Classes.

102.     Defendants have acted or have refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

103.     The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

104.     Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)     whether Defendants have failed to pay the full minimum wage for each hour worked;

(b)     whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)     whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and

(d)     whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

105.    Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes. Plaintiff has no interests adverse to the Classes she seeks to represent, and has retained competent and experienced counsel.

106.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

107.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

108.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of the PMWA.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

109.    Plaintiff, on behalf of herself and the Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

110.    At all relevant times, Defendants have had gross revenues in excess of $500,000.

111.    At all relevant times, Defendants have been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

112.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

113.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only a sub minimum wage.

114.    Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

115.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

116.    Plaintiff, on behalf of herself and the Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

117.    As set forth above, Defendants failed to comply with the FLSA, its applicable regulations (including 29 C.F.R. § 531.56(e)), and DOL guidance (including the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f)) by requiring Plaintiff and the members of the Collective Class to perform non-tipped labor unrelated to their tipped occupation over the course of their regular workweek, while paying said employees at the sub-minimum wage, tip credit rate.

118.    Examples of such non-tipped labor unrelated to the primary duties of Tipped Employees includes, but are not limited to, taking out the trash, gathering tablecloths and preparing

20

them for pick up, rolling silverware; stocking inventory; and organizing the banquet room's tables and chairs for parties.

119.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the full minimum wage for this work, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage for the time spent performing this non-tip generating work.

120.    Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

121.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### THIRD CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
#### (On Behalf of the Collective Class)

122.    Plaintiff, on behalf of herself and the Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

123.    As set forth above, Defendants failed to comply with the FLSA, its applicable regulations (including 29 C.F.R. § 531.56(e)), and DOL guidance (including the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f)) by requiring Plaintiff and the members of the Collective Class to perform non-tipped labor related to their tipped occupation for substantial and unreasonable amounts of time in excess of twenty percent (20%) of their regular workweek, and at times that are not contemporaneous to direct-service duties, while paying said employees at the sub-minimum wage, tip credit rate.

124.    Examples of such non-tipped labor related to the primary duties of Tipped Employees includes, but are not limited to, cutting fruit, stocking ice bins, rolling silverware; and preparing glassware for banquets.

125.    Defendants required Plaintiff and members of the Collective Class to perform such related but non-tipped work for substantial and unreasonable period of times prior to waiting on any customers, after waiting on last customers, prior to the restaurants' opening for business and following the restaurants' close for business.

126.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the full minimum wage for this work, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage for the time spent performing this non-tip generating work.

127.    Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

128.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### FOURTHTH CLAIM FOR RELIEF
### <u>PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS</u>
### (On Behalf of the PA Class)

129.    Plaintiff, on behalf of herself and the members of the PA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

130.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

131.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the Pennsylvania mandated minimum wage, Defendants improperly took a tip credit and paid Tipped Employees a subminimum wage. The result of this conduct was that Tipped Employees were paid at a rate well below the Pennsylvania minimum wage.

132.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the required minimum wage in Pennsylvania, Defendants took a tip credit and paid Tipped Employees a subminimum wage.

133.    At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy the notification requirements in order for Defendants to claim the tip credit.

134.    As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

135.    Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

136.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**PENNSYLVANIA WAGE PAYMENT COLLECTION LAW**
**(On Behalf of the PA Class)**

137.    Plaintiff, on behalf of herself and the members of the PA Class, re-alleges and incorporate by reference the paragraphs above as if they were set forth again herein.

138.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the WPCL.

139.    Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiff and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

140.    As a result of Defendants' unlawful policies, Plaintiff and the members of the PA Class have been deprived of compensation due and owing.

141.    For example, Defendants unilaterally altered the compensation scheme Plaintiff had agreed to – earning at least the mandated minimum wage – to a scheme whereby Defendants only paid Plaintiff a subminimum wage.

142.    Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Classes respectfully requests the Court grant the following relief:

A.    Designation of this action as a collective action on behalf of the Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.    Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class;

C.    Designation of Plaintiff as representative of the Classes;

D.    Designation of Plaintiff's counsel as class counsel for the Classes;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, PMWA, and WPCL;

F.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.      An award of unpaid minimum wages to Plaintiff and the members of the Collective Class and PA Class;

H.      An award of liquidated damages to Plaintiff and members of the Classes;

I.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

J.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the complaint.

Dated: August 18, 2022                              Respectfully submitted,

                                        **CONNOLLY WELLS & GRAY, LLP**

                                        By: */s/ Gerald D. Wells, III*
                                             Gerald D. Wells, III
                                        Robert J. Gray
                                        101 Lindenwood Drive, Suite 225
                                        Malvern, PA 19355
                                        Telephone: 610-822-3700
                                        Facsimile: 610-822-3800
                                        Email:  gwells@cwglaw.com
                                                rgray@cwglaw.com

                                        *Attorneys for the Plaintiff and the*
                                        *Proposed Classes*

# EXHIBIT A

## CONSENT TO BECOME A PARTY PLAINTIFF

1.    I, CHANTAL CARROZZA, consent to sue as a Plaintiff in this action, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*

2.    During the applicable period, I was an employee of Defendants and was not paid properly for all hours worked.

3.    By my signature below, I hereby authorize counsel to prosecute the claims in my name and on my behalf, in this action, for Defendants' failure to pay all wages due and owing in accordance with federal law.

8-11-22
Date

Chantal Carrozza
Print Name

Chantal Carrozza
Signature

# EXHIBIT B



Redacted

EXHIBIT C



McKenzie Brew House / Payroll Account

14145

Employee
Chantal Carroza,

| Earnings and Hours | Hours | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Bartender | 18:52 | 2.84 | 53.58 | 53.58 |
| Training | 21:30 | 7.25 | 155.88 | 155.88 |
| Reported Tips In | | | 72.00 | 72.00 |
| | 40:22 | | 281.46 | 281.46 |

Pay Period: 04/25/2022 - 05/08/2022

Net Pay

Pay Date: 05/14/2022

163.06     163.06

| Taxes | Current | YTD Amount |
|---|---|---|
| Local Services Tax | -2.00 | -2.00 |
| State Unemployment Tax/employee | -0.25 | -0.25 |
| Local Earned Income Tax | 0.00 | |
| Medicare Employee Addl Tax | 0.00 | |
| EIT | -2.81 | -2.81 |
| Federal Withholding | -11.00 | -11.00 |
| Social Security Employee | -17.45 | -17.45 |
| Medicare Employee | -4.08 | -4.08 |
| PA - Withholding | -8.64 | -8.64 |
| PA - Unemployment Employee | -0.17 | -0.17 |
| | -46.40 | -46.40 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| Reported Tips Out | -72.00 | -72.00 |

McKenzie Brew House. MCKENZIE BREW HOUSE, INC

Powered by Intuit Payroll

Redacted