## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CHANTAL CARROZZA, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>MCKENZIE BREW HOUSE, INC.; MCKBH, INC.; BKBC, INC.; WILLIAM MANGAN; and DOE DEFENDANTS 1-10,<br><br>                    Defendants. | Civil Action No.: 2:22-cv-03291-MRP |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT

This Joint Stipulation of Settlement and Release Agreement (the "*Settlement Agreement*"),[1] is entered into by and between Plaintiff Chantal Carrozza ("*Plaintiff*" or "Carrozza"), on behalf of herself and the *Tipped Employees*, and Defendants McKenzie Brew House, Inc., MCKBH, Inc., BKBC, Inc., and William Mangan (collectively referred to as the "*Named Defendants*").

## RECITALS

WHEREAS, *Plaintiff* commenced litigation captioned *Carrozza v. McKenzie Brew House, Inc., et al.,* Civil Action No. 22-3291 in the United States District Court for the Eastern District of Pennsylvania (the "*Action*") asserting various wage and hour claims against the *Named Defendants* under Pennsylvania state law and the Fair Labor Standards Act ("*FLSA*");

WHEREAS, the *Named Defendants* have vigorously contested *Plaintiff's* claims from the outset, including *Plaintiff's* assertions that the *Action* may be maintainable as a class and/or collective action;

WHEREAS, the *Parties* have engaged in significant paper discovery practice;

WHEREAS, the *Parties* also engaged in months of informal settlement discussions amongst themselves, including the production of key financial documents from certain of the *Named Defendants*;

WHEREAS, the *Named Defendants* continue to deny all liability with respect to any and all claims alleged in the *Action* and have asserted numerous defenses;

---

[1] Italicized words are defined herein.

WHEREAS, the *Named Defendants* represent and warrant that subsequent to the filing of the *Action,* they are in compliance with the tip credit notification requirements under both the *FLSA* and Pennsylvania state law;

WHEREAS, the *Parties* participated in an all-day settlement conference before the Honorable Judge Perez of the Eastern District of Pennsylvania ("*Judge*") – an experienced judicial officer in mediating complex matters;

WHEREAS, the *Parties* reached an agreement in principle for a settlement in this *Action* only with the assistance of the *Judge*; and

WHEREAS, the *Parties* desire to promptly and fully resolve and settle with finality the *Action* without further litigation;

NOW, THEREFORE, the *Parties*, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

1. **BACKGROUND**

Plaintiff Chantal Carrozza worked as a bartender at a restaurant operated by the *Defendants* doing business as *McKenzie Brew House* ("*McKenzie*") in Glenn Mills, Pennsylvania. Ms. Carrozza received part of her compensation in tips, and the *Named Defendants* utilized a "tip credit" to satisfy its federal and state minimum wage obligations in paying *Plaintiff* and other *Tipped Employees*. Ms. Carrozza claims the *Named Defendants*: (i) failed to satisfy the notice requirements of the tip credit provisions in federal and state law; (ii) failed to ensure *Plaintiff* and other *Tipped Employees* earned the mandated minimum wage when taking the tip credit; (iii) paid *Plaintiff* and other *Tipped Employees* the tipped wage even when they were performing non-tipped duties; (iv) required her and other *Tipped Employees* to perform excessive/unrelated side work; and (v) improperly accounted for service charges when *Plaintiff* and other *Tipped Employees* worked banquets for the *Named Defendants*. The *Named Defendants* vigorously deny each allegation and maintain that their restaurants' employees, including Ms. Carrozza, were properly paid at all times.

On August 18, 2022, on the basis of those alleged facts, *Plaintiff* sued the *Named Defendants* in the United States District Court for the Eastern District of Pennsylvania, Case No. 2:22-cv-03291-HB. On her own behalf, and on behalf of a putative class and putative collective, Ms. Carrozza asserted claims under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and Pennsylvania Wage Payment Collection Law ("WPCL"). *Plaintiff* sought recovery of alleged unpaid wages, liquidated damages, and attorneys' fees and costs. The *Action* was initially assigned to the Honorable Harvey Bartle, III.

Thereafter, on October 17, 2022, the *Named Defendants* filed their Answer and Affirmative Defenses ("*Answer*"). On November 2, 2022, the *Court* held a pretrial conference in this matter. That same day, the *Court* entered a scheduling order. Thereafter discovery began in earnest. On

January 27, 2023, the *Named Defendants* sought an unopposed motion for the extension of time to complete initial discovery. The *Court* subsequently granted that motion and thereafter this *Action* was transferred to the *Judge.* During this time, the *Parties* were engaged in significant, informal settlement discussions. These discussions included the production of certain, sensitive financial information from several of the *Named Defendants*. Ultimately, the *Parties* agreed to seek the *Court's* assistance in resolving their dispute through mediation.

On June 14, 2022, the *Parties* participated in a fulsome settlement conference with the *Judge.* This all-day settlement conference resulted in a settlement in principle, which the *Parties* memorialized in a Memorandum of Understanding.

Based upon their independent analysis, and recognizing the risks of continued litigation, counsel for *Plaintiff* believes that the settlement with *Named Defendants* for the consideration of and on the terms set forth in this *Settlement Agreement* is fair, reasonable, and is in the best interest of *Plaintiff* and *Settlement Class* members, in light of all known facts and circumstances, including the risk of delay and defenses asserted by *Defendants*. Although *Defendants* deny liability, they have agreed to the settlement to avoid the cost and burden of continued litigation and because they too believe it is in the *Parties'* best interests. For those reasons, and because an effective release is contingent on *Court* approval, the *Parties* submit their *Settlement Agreement* to this *Court* for its review.

## 2.    <u>DEFINITIONS</u>

2.1    ***Action.*** The legal action captioned *Carrozza v. McKenzie Brew House, Inc., et al.,* Civil Action No. 22-3291-MRP, in the United States District Court for the Eastern District of Pennsylvania.

2.2    ***Bar Date.*** The date by which a *Settlement Class* member must submit any of the following to the *Claims Administrator*: (i) an objection; (ii) a *Request for Exclusion* from the *PA Class;* (iii) a *Claim Form;* and/or (iv) a declaration contesting the validity of the *Claims Administrator's* calculations regarding that individual *Settlement Class* member's *Estimated Settlement Payment*. The *Parties* agree that the *Bar Date* shall be at least sixty (60) days after the mailing of the *Notice Packet*

2.3    ***Claim Form.*** The form substantially in the form attached hereto as Exhibit B that shall be mailed with the *Notice Packet* for *Tipped Employees* to complete before becoming *Participating Settlement Class Members*. Where appropriate, the *Claim Form* shall include the form or language to substitute for Department of Treasury Internal Revenue Service Form W-9, Request for Taxpayer Identification Number and Certification. The *Claims Administrator* may elect to establish a secure portal by which *Tipped Employees* can complete and submit their *Claim Form.*

2.4    ***Claims Administrator.*** A claims-administration firm capable of providing appropriate and timely administrative assistance in administering the settlement of this *Action* as set forth in this *Settlement Agreement*. The *Claims Administrator* shall be selected by *Plaintiff* with the approval of *Defendants,* whose consent shall not be unreasonablywithheld.

3

**2.5**    ***Class Counsel.*** Connolly Wells & Gray, LLP.

**2.6**    ***Class Member.*** Any current or former *Tipped Employee* employed by *Defendants* within the Commonwealth of Pennsylvania who worked one or more *Work Hours* during the *Class Period* who does not timely submit a *Request for Exclusion*.

**2.7**    ***Class Notice.*** The notice substantially in the form of Exhibit A to be directed to *Settlement Class* members. The purpose of the *Class Notice* is to inform members of the *Settlement Class* about the resolution of the *Action* and the material terms of this *Settlement Agreement*.

**2.8**    ***Class Period.*** August 18, 2019 through October 31, 2022.

**2.9**    ***Complaint.*** The complaint filed in this *Action* on or around August 18, 2022.

**2.10**   ***Corporate Defendants.*** McKenzie Brew House, Inc., MCKBH, Inc., and BKBC, Inc. The *Corporate Defendants* shall also be referred to as *McKenzie Brew House*.

**2.11**   ***Court.*** The United States District Court for the Eastern District of Pennsylvania.

**2.12**   ***Cy Pres Distribution.*** Any and all funds that, pursuant to the terms of this *Settlement*, require distribution to a *Cy Pres Recipient* pursuant to Section 4.13 of this *Settlement Agreement*.

**2.13**   ***Cy Pres Recipient.*** The recipient of any *Cy Pres Distribution* pursuant to Section 4.13. The *Parties* stipulate and agree that any recipient of a *Cy Pres Distribution* proposed to the *Court* shall, to the extent feasible, focus their services on providing food to individuals in the Chester/Delaware County area of Southeastern Pennsylvania (i.e., a food pantry or similar).

**2.14**   ***Defendants.*** McKenzie Brew House, Inc., MCKBH, Inc., BKBC, Inc., and William Mangan.

**2.15**   ***Defendants' Counsel.*** Morgan, Lewis & Bockius LLP.

**2.16**   ***Effective Date.*** The first day after the *Settlement* becomes *Final*.

**2.17**   ***Estimated Settlement Payment.*** "Estimated Settlement Payment" will have the meaning set forth in Section 4.7.

**2.18**   ***Expiration Period.*** 180 days after the mailing of the *Settlement Payment* to the *Participating Settlement Class Members*.

**2.19**   ***Final.*** With respect to any judicial ruling or order, an order that is final for purposes of 28 U.S.C. § 1291, and (a) for which the time has expired to file an appeal, motion for reconsideration or clarification, motion for re-argument, motion for rehearing, petition for

a writ of certiorari or other writ ("*Review Proceeding*") with respect to such judicial ruling or order with no such *Review Proceeding* having been filed; or (b) if a *Review Proceeding* has been filed with respect to such judicial ruling or order, (i) the judicial ruling or order has been affirmed without material modification and with no further right of review, or (ii) such *Review Proceeding* has been denied or dismissed with no further right of review.

2.20    ***Final Approval Hearing.*** The hearing scheduled by the *Court* to decide whether to approve the *Settlement* as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23. Such a hearing will only constitute a *Final Approval Hearing* if it is scheduled between75 and 90 days after entry of the *Preliminary Approval Order*, so as to provide adequate time for *Class Notice* to be disseminated.

2.21    ***Final Approval Order.*** The document substantially in the form attached hereto as Exhibit E, which will be submitted to the *Court* by the *Parties* to seek: (1) approval of this *Settlement Agreement* on the terms provided herein (or as the same may be modified by subsequent mutual agreement of the *Parties* subject to approval of the *Court*), adjudging such terms to be adequate, fair and reasonable, and in the best interests of *Plaintiff* and *Settlement Class* members; (2) certification of the *Settlement Class* for settlement purposes only; (3) approval of *Class Counsel's* application for an award of their fees, costs and expenses; (4) approval of *Class Counsel's* application for a *Service Payment* to *Plaintiff*; and (5) dismissal of the *Action* with prejudice.

2.22    ***Final Effective Date.*** The date on which the *Settlement* becomes *Final* and all *Settlement Conditions* have either been satisfied or waived in accordance with this *Settlement Agreement*.

2.23    ***FLSA Collective.*** *Plaintiff* and all *Tipped Employees* who affirmatively opt-into this *Action* pursuant to Section 216(b) of the FLSA by submitting a *Claim Form* to the *Claims Administrator* prior to the *Bar Date.*

2.24    ***Individual Defendant.*** William Mangan.

2.25    ***Litigation.*** The legal action captioned *Carrozza v. McKenzie Brew House, Inc., et al.,* Civil Action No. 22-3291-MRP, in the United States District Courtfor the Eastern District of Pennsylvania. The terms *Litigation* and *Action* shall be used interchangeably herein.

2.26    ***Named Defendants.*** McKenzie Brew House, Inc., MCKBH, Inc., BKBC, Inc., and William Mangan. The terms *Defendants* and *Named Defendants* shall be used interchangeably herein.

2.27    ***Notice Packet.*** The (i) *Class Notice* mailed to *Settlement Class* members in accordance with this *Settlement Agreement*; (ii) *Estimated Settlement Payment* for the individual *Settlement Class* member to whom the *Class Notice* was mailed; (iii) the required deductions, if any, set forth within *Defendant's* payroll records (*e.g.*, garnishments, tax liens, child support); and (iv) *Claim Form.*

**2.28**   *Notice Period.* The period of time from the date the *Claims Administrator* mails the *Notice Packet* through the *Bar Date.*

**2.29**   *PA Class.* All former and current *Tipped Employees* of *Defendants* who worked in the Commonwealth of Pennsylvania at any time during the *Class Period* at any one or more of *Defendants'* restaurants operating under the brand "McKenzie Brew House" and/or "Will & Bill's Brewery & Restaurant" who has not filed a *Request for Exclusion* prior to the *Bar Date.* Such a class shall be certified for settlement purposes only pursuant to Federal Rule of Civil Procedure 23(b)(3).

**2.30**   *Participating Settlement Class Members.* Every member of the *Settlement Class* who submits a valid and timely *Claim Form* in accordance with the terms of this *Settlement Agreement.* In accordance with the terms of this *Settlement Agreement*, only *Participating Settlement Class Members* will release their FLSA claims and only *Participating Settlement Class Members* will receive any money in connection with this *Settlement.*

**2.31**   *Parties.* *Plaintiff* and *Defendants* and, in the singular, "Parties" refers to any of them, as the context makes apparent.

**2.32**   *Plaintiff.* The named plaintiff in this *Action*, Chantal Carrozza.

**2.33**   *Plaintiff's Counsel.* Connolly Wells & Gray, LLP.  The terms *Plaintiff's Counsel* and *Class Counsel* shall be used interchangeably herein.

**2.34**   *Preliminary Approval Order.* The document substantially in the form attached hereto as Exhibit D, which will be submitted to the *Court* by the *Parties* to seek (a) preliminary approval of this *Settlement Agreement*; (b) dissemination of *Class Notice*; (c) approval of the proposed form of *Class Notice*; (d) certification a Fed. R. Civ. P. 23(b)(3) settlement only class; (e) appointment of Chantal Carrozza as class representative and the law firm of Connolly Wells & Gray, LLP as *Class Counsel*; and (f) a findingthat the proposed manner of serving the *Class Notice* to the members of the *Settlement Class* is the best notice practicable under the circumstances.

**2.35**   *Released Persons.* *Defendants* and their past, present, and future members, parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of the *Corporate Defendants'* past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, divisions, units, branches and anyother persons or entities acting on *Defendants'* behalf.

**2.36**   *Releasing Persons.* Every member of the *Settlement Class* and his or her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interests, and assigns.

**2.37**   *Request for Exclusion.* The document substantially in the form attached hereto as Exhibit C wherein a *Tipped Employee* who worked for *Defendants* during the *Class Period* and

would otherwise be a member of the *PA Class* requests to be excluded from the terms of this *Settlement*. It is stipulated and agreed by the *Parties* that any individual who files a *Request for Exclusion* by the *Bar Date* shall not receive any benefit under this *Settlement Agreement* nor be bound by the *Settlement Agreement's* terms and conditions, including any releases contained herein.

2.38 **Restaurants.** The restaurant establishments operated by *Defendants* and doing business as "McKenzie Brew House" or "Will & Bill's Brewery & Restaurant."

2.39 **Review Proceeding.** "Review Proceeding" will have the meaning set forth in Section 2.18.

2.40 **Service Payment.** The amount to be approved by the *Court* for payment to Plaintiff Chantal Carrozza in recognition for her efforts in assisting in the prosecution of this *Action* on behalf of the *Settlement Class*. The *Parties* stipulate and agree that *Plaintiff* shall not seek a *Service Payment* in excess of $5,000.00 in this *Action*.

2.41 **Settlement.** The resolution of the *Action* pursuant to the agreement of the *Parties* on the terms and conditions as set forth in this *Settlement Agreement.*

2.42 **Settlement Amount.** The $440,000.00 payment that *Defendants* will pay to settle the *Action* as described in this *Settlement Agreement*, inclusive of *Class Counsel's* fees and costs, the *Service Payment*, and the *Claims Administrator's* fees and expenses. The *Settlement Amount* may remain in *Defendants'* general funds until required to be provided to the *Claims Administrator* for distribution pursuant to Section 4 and not earlier than January 12, 2024. Except as set forth in this *Settlement Agreement*, *Defendants* shall not be called upon or required to contribute additional monies above the *Settlement Amount* under any circumstances whatsoever. Under no circumstances whatsoever shall any portion of the *Settlement Amount* revert to *Defendants* except as set forth in Section 7.3 (B)(2)*.*

2.43 **Settlement Agreement.** This *Settlement Agreement*, including any modifications or amendments adopted pursuant to Section 8.14.

2.44 **Settlement Check**. Checks issued to *Participating Settlement Class Members* in the amount of their individual *Settlement Payment*. Each *Settlement Check* shall contain release language on its back in conformity with Section 4.12, or in an attached letter sent with the *Settlement Payment*, whichever the *Claims Administrator* determines is easier.

2.45 **Settlement Class.** *Plaintiff* and any *Class Member* who does not opt-out within the specified period in accordance with the requirements of this *Settlement Agreement*. *Defendants* represent and warrant that all members of the *Settlement Class* are *Tipped Employees*.

2.46 **Settlement Conditions.** Each of the conditions and obligations set forth in Section 3 of this *Settlement Agreement* that must either be satisfied or waived in writing by the Party entitled to the benefit of the condition or obligation.

**2.47**    ***Settlement Payment.*** The payment to which a *Participating Settlement Class Member* will receive pursuant to the *Settlement Agreement*.

**2.48**    ***Tipped Employees.*** Any individual employed by *Defendants* during the *Class Period* at any one or more of the *Restaurants* where *Defendants* attempted to claim a "tip credit" for that employee pursuant to Section 203(m) of the *FLSA*. Such employees include bartenders, servers, bussers, and/or food runners.

**2.49**    ***Work Hour.*** Any hour worked by a *Tipped Employee* for *Defendants* during the *Class Period* at any one or more of the *Restaurants* for which *Defendants* claimed a tip credit pursuant to Section 203(m) of the FLSA. The total *Work Hours* for the *Settlement Class* during the *Class Period* is _____ according to *Defendants'* payroll records.

**3.**    <u>**SETTLEMENT CONDITIONS**</u>

The Parties stipulate and agree that each of the *Settlement Conditions* set forth in this Section is a material term. Except as otherwise provided in this *Settlement Agreement*, the *Parties* will use reasonable efforts to cause each of the following *Settlement Conditions* to occur and will support approval of the *Settlement* before the *Court*.

**3.1**    **Dismissal of the Doe Defendants.** At or prior to the *Plaintiff* moving for preliminary approval, *Plaintiff* shall seek dismissal of the Doe Defendants from this *Action*, without prejudice. Each party agrees to bear its own costs with respect to the dismissal of these defendants from this *Action*.

**3.2**    **Preliminary Approval of Settlement Agreement by the *Court*.** On or before August 15, 2023, the *Parties* will submit this *Settlement Agreement* (including all exhibits) to the *Court* for preliminary approval and will jointly request entry of a *Preliminary Approval Order* substantially in the form attached hereto as Exhibit D.

**3.3**    **Certification of *Settlement Class*.** The *Court* shall grant certification for settlement purposes only of the *Settlement Class* consisting of the (i) FLSA Collective and (ii) PA Class. For settlement purposes only, and to effectuate this *Settlement Agreement*, *Defendants* will not object to certification set forth herein.

**3.4**    **Certification by the *Claims Administrator* of the *Total Hours* for the *Tipped Employees*.** Pursuant to Section 4.6, the *Claims Administrator* shall either (i) certify that no adjustment to the *Settlement Amount* is necessary or (ii) advise *Plaintiff's Counsel* and *Defendants' Counsel* that there is a deviation in the *Total Hours.* Such a certification shall occur at least ten (10) days before the *Final Approval Hearing.* Said certification can be accomplished through notifying *Class Counsel* and *Defendants' Counsel.*

**3.5**    **Entry of *Final Approval Order* by the *Court*.** The *Parties* will jointly request that the *Court* schedule a *Final Approval Hearing* between 75 and 90 calendar days after entry of the *Preliminary Approval Order*. At the *Final Approval Hearing*, the *Parties* will jointly

move for entry of a *Final Approval Order*, substantially in the form attached hereto as Exhibit C.

3.6     ***Defendants*** **Paying the *Settlement Amount*.** *Defendants* will transfer the *Settlement Amount* to the *Claims Administrator* within five (5) business days of the *Settlement* becoming *Final* provided the *Settlement* becomes *Final* on or after January 12, 2024. If the *Settlement* becomes *Final* before January 12, 2024, *Defendants* will transfer the *Settlement Amount* to the *Claims Administrator* on January 12, 2024.

3.7     ***Final Approval Order*** **Becoming *Final*.** If the *Court* denies approval of any material term of the *Settlement*, whether initially, or if a *Review Proceeding* has been instituted, then after the conclusion of any *Review Proceeding*, *any Party* may terminate the *Settlement Agreement* under Section 7. If the *Court* does not enter the *Final Approval Order* or if the *Final Approval Order* does not become *Final* then any *Party* may terminate this *Settlement Agreement* pursuant to Section 7.

## 4.     <u>TERMS OF SETTLEMENT</u>

4.1     ***Settlement Amount*.** *Defendant* will pay the *Settlement Amount*, which includes *Class Counsel's* fees and costs as awarded by the *Court*, any *Service Payment* as awarded by the Court, and the *Claims Administrator's* fees and expenses under the *Settlement Agreement*. Also being paid fromthe *Settlement Amount* will be all *Participating Settlement Class Members'* claims. In return for the *Settlement Amount*, *Defendants* will obtain (among other things) the releases described in Section 5.

4.2     **Class Certification.** In connection with preliminary and final approval of the proposed *Settlement*, *Plaintiff* will, through *Class Counsel*, seek certification for settlement purposes only of the *FLSA Collective* and the *PA Class*. Only *Participating Settlement Class Members* will receive any money in connection with this *Settlement.*

4.3     **Preliminary Approval.** The *Parties* will use reasonable efforts to enable the *Plaintiff* to file a motion ("Preliminary Approval Motion") with the *Court* for the issuance of a *Preliminary Approval Order*, substantially in the form attached hereto as Exhibit D, which, among other things, will: (a) preliminarily approve this *Settlement Agreement*; (b) direct the time and manner of the *Notice Packet* to be served upon the *Settlement Class*; (c)     find that the proposed form of *Class Notice* fairly and adequately (i) describes the terms and effect of this *Settlement Agreement*, (ii) provides notice to the *Settlement Class* of the time and place of the *Final Approval Hearing* and (iii) describes how the recipients of the *Class Notice* may object to the *Settlement*; and (d) find that the proposed manner of serving the *Class Notice* to the members of the *Settlement Class* is the best notice practicable under the circumstances.

4.4     **Cooperation.** The *Parties* will, in good faith, take reasonable steps to (a) secure expeditious entry of the *Preliminary Approval Order* by the *Court*; (b) seek a date for the *Final Approval Hearing* between 75 and 90 calendar days after entry of the *Preliminary Approval Order*; and (c) and seek entry of the *Final Approval Order*.

4.5    **Retention of *Claims Administrator*.** The *Claims Administrator* will be responsible for the claims-administration process and distribution to *Class Members* as provided herein. *Defendants* will cooperate with the *Claims Administrator* and assist it in any reasonable way possible in administering this *Settlement Agreement*. *Claims Administrator* fees are to be paid out of the *Settlement Amount*. The *Claims Administrator* will provide *Class Counsel* and *Defense Counsel* with a final bill of its fees no later than ten (10) days before the *Final Approval Hearing*.

4.6    **Class Information.** Within fourteen (14) calendar days after the *Court* enters a *Preliminary Approval Order*, *Defendants* will provide the *Claims Administrator* with a list, in electronic form, containing the following information for *Plaintiff* and for each *Tipped Employee*: name, last known address, last known telephone number(s), last known email address(es), Social Security Number, hourly rate of pay paid by *Defendants* (the "cash wage" paid pursuant to Section 203(m)), number of hours recorded in *Defendants'* timekeeping system, the dates employed by *Defendants* at any time during the *Class Period*. At the same time, *Defendants* will also provide *Class Counsel* with the same information it provides to the *Claims Administrator,* with such information being produced in the same format.  The *Claims Administrator* will not use the information produced pursuant to this section for any purpose other than to administer the *Settlement*. Similarly, *Class Counsel* agrees that the class information as described in this paragraph shall not be used in the future in any way (including the prosecution of claims) against *Defendants*. The *Parties* stipulate and agree that they will each cooperate and use their best efforts to provide the *Claims Administrator* any information the *Claims Administrator* requests in order to facilitate its duties and obligations set forth in this *Settlement Agreement*.

(A)    **Total Hours**. Data produced by Defendants reflects that during the *Class Period*, *Defendants* claimed a "tip credit" for 169,898.28 hours worked by *Tipped Employees*. Should during the course of administering this *Settlement*, it be determined that the amount of actual hours *Defendants* claimed a "tip credit" for during the *Class Period* deviates by three percent (3%) or more from the previously produced data, *Plaintiff* may elect, at her sole discretion, to terminate this *Settlement Agreement* in accordance with Section 7 if *Defendants* do not agree in writing to add to the *Settlement Amount* on a dollar-for-dollar basis an amount to bring the deviation below the 3% margin within seven days of being so notified by the *Claims Administrator*.

4.7    **Calculation of *Settlement Payments* for *Plaintiff* and *Settlement Class Members*.**

(A)    ***Estimated Settlement Payment*.** The *Notice Packet* will contain an *Estimated Settlement Payment* for the individual member of the *Settlement Class* to whom it was mailed. The *Claims Administrator* will calculate the *Estimated Settlement Payment* in accordance with the following steps:

(1)    The *Claims Administrator* will deduct from the *Settlement Amount* (i) the anticipated amount of attorneys' fees to be requested (1/3 of the *Settlement Amount*), plus estimated expenses of *Plaintiff's Counsel*, (ii) the maximum

*Service Payment* sought for the Plaintiff, and (iii) the estimated fees and expenses of the *Claims Administrator*. The resulting number will be referred to as the "*Estimated Net Settlement Amount*."

(2)     For each *Class Member*, the *Claims Administrator* will total the amount of tip credit taken by *Defendants* for all hours worked as a *Tipped Employee* during the *Class Period*. For example, if an individual was paid $2.83 per hour, resulting in *Defendants* taking a tip credit of $4.42 per hour, and that employee worked 100 hours during the *Class Period*, that individual *Tipped Employee* would be owed $442.00. This number will be referred to as the "*Estimated Individual Damage Amount*."

(3)     The *Estimated Individual Damage Amounts* for all *Tipped Employees* will then be added together by the *Claims Administrator* to determine the "*Class Members' Total Damages Amount*."

(4)     The *Estimated Net Settlement Amount* will then be divided by the *Class Members' Total Damages Amount*.

(5)     The *Claims Administrator* will then multiply the resulting fractional amount by a *Class Member's Estimated Individual Damage Amount* to determine that *Class Member's* "*Estimated Settlement Payment*."

(6)     Upon receipt of the *Notice Packet,* any *Class Member* who wishes to challenge either (i) the calculation of his or her *Estimated Settlement Payment* or (ii) the required deductions set forth within *Defendants'* payroll records (*e.g.*, garnishments, tax liens, child support) must submit a written, signed declaration to the *Claims Administrator* for receipt by the *Claims Administrator* on or before the *Bar Date,* along with documentation (e.g., pay stubs or other records) to support the challenge. The *Claims Administrator* will resolve the challenge and make a final and binding determination without hearing or right of appeal.

(B)     **Settlement Payment.** Only *Participating Settlement Class Members* will receive money in connection with this *Settlement*. Once the *Settlement* becomes *Final*, the *Claims Administrator* will calculate *Settlement Payments* for *Participating Settlement Class Members* in the following steps:

(1)     The *Claims Administrator* will deduct from the *Settlement Amount* the following amounts as awarded or permitted by the *Court*: (i) *Class Counsel's* attorneys' fees and expenses, (ii) the *Service Payment*, if any, to the *Plaintiff*, and (iii) the fees and expenses of the *Claims Administrator*. The resulting number will be referred to as the "*Net Settlement Amount*."

(2)     For each *Participating Settlement Class Member*, the *Claims Administrator* will total the amount of tip credit taken by *Defendants* for all hours worked

as a *Tipped Employee* during the *Class Period*. This number will be referred to as the "*Participating Individual Damage Amount*." For example, if an individual was paid $2.83 per hour, resulting in *Defendants* taking a tip credit of $4.42 per hour, and that employee worked 100 hours during the *Class Period* where the $4.42 tip credit was taken, that individual's *Participating Individual Damage Amount* wouldbe $442.00.

(3)     The *Participating Individual Damage Amount* for all *Participating Settlement Class Members* will then be added together by the *Claims Administrator* to determine the "*Participating Settlement Class Members' Total Damages Amount*."

(4)     The *Net Settlement Amount* will be divided by the *Participating Settlement Class Members' Total Damages Amount*.

(5)     The resulting fractional amount will then be multiplied by a *Participating Individual Damage Amount* to determine that *Participating Settlement Class Member's Settlement Payment*.

(6)     To avoid a windfall to any individual *Participating Settlement Class Member*, no individual's *Participating Settlement Class Member's Settlement Payment* will be higher than ten times that individual's *Estimated Settlement Payment*. Should any *Participating Settlement Class Member's* settlement payment be higher than ten times his or her *Estimated Settlement Payment*, such amount will be reduced accordingly and with such reduction subject redistribution to the other *Participating Settlement Class Members*. If all Claimants are subject to the above cap, then any reduction shall be subject to a Court-approved *Cy Pres Distribution*.

(C)     For purposes of performing the calculations set forth above, the *Claims Administrator* will rely on the hours recorded in *Defendants'* timekeeping system when determining the total *Work Hours* for *Class Members* or *Participating Settlement Class Members*. Further, the Claims Administrator will also rely on tip credit claimed, as recorded in *Defendants'* timekeeping system, when performing the calculations set forth above.

(D)     *Plaintiff*, *Class Counsel*, *Defendants*, and *Defendants' Counsel* will have no responsibility for, or liability arising from, the *Claims Administrator's* calculations of the distribution of the *Settlement Amount* including, without limitation, the calculation of an individual *Participating Settlement Class Member's Settlement Payment*.

(E)     *Plaintiff* is a member of the *Settlement Class* and shall be deemed a *Participating Settlement Class Member* by operation of this *Settlement Agreement*. *Plaintiff's Settlement Payment* will be calculated in accordance with the formula set forth above.

(F)     Ten days before the *Final Approval Hearing*, the *Claims Administrator* will certify jointly to *Class Counsel* and *Defendants' Counsel* a list of all *Participating Settlement Class Members*, indicating for each member of the *Settlement Class* the total *Settlement Payment* due to that individual pursuant to this *Settlement Agreement*. The *Claims Administrator* will also indicate whether any challenges to a *Participating Settlement Class Member's Settlement Payment* has been received and, if so, the status of that challenge.

**4.8    Class Notice.**

(A)     The *Claims Administrator* will disseminate the *Class Notice* by the following means: mail and email, to the extent *Defendants* possess email addresses for *Class Members*. The *Claims Administrator* will mail the *Notice Packet* via First Class Mail to each *Class Member* within fourteen (14) calendar days after the *Claims Administrator* receives the class list and the data required to perform the preliminary calculations. The *Claims Administrator* will (among other things) provide estimated settlement payment amounts in the *ClassNotice*, inform *Class Members* that only individuals submitting a timely *Claim Form* to the *Claims Administrator* will receive any money under this *Settlement*, and include a prepaid, business reply envelope with the mailing and, if *the Claims Administrator* so determines, establish a secure portal by which *Tipped Employees* can complete and submit their *Claim Form* (to facilitate return of *Claim Forms*).

(B)     Before mailing, the *Claims Administrator* will attempt to confirm the accuracy of the addresses of each member of the *Settlement Class* through the United States Post Office's National Change of Address ("NCOA") database. If a *Notice Packet* is returned as undeliverable, the *Claims Administrator* will perform one skip trace and resend by First Class United States Mail the *Court*-approved *Class Notice* once only to those members of the *Settlement Class* for whom it obtains more recent addresses.

(C)     Within three days after the *Claims Administrator* effectuates mailing of the *Notice Packet*, the *Claims Administrator* will also email a copy of the *Class Notice* to any *Class Member* for which *Defendants* provided that *Class Member's* last known email address. The email shall also include a statement that the full *Notice Packet* has been mailed to the individual's last known address and, if *the Claims Administrator* so determines, a link to the portal to complete and submit their *Claim Form*.

(D)     The *Claims Administrator* shall, where appropriate, send a reminder postcard or reminder email fifteen (15) days prior to the *Bar Date* to any individual who has not submitted a *Claim Form* <u>advising them of the forthcoming *Bar Date*</u>.

(E)     The *Claims Administrator* will mail a *Court*-approved *Class Notice* to any *Class Member* who contacts the *Claims Administrator* during the time period between the initial mailing of the *Class Notice* and the *Bar Date* and requests that a *Class*

*Notice* be re-mailed. During the *Notice Period*, no other communications will be sent by either *Party* to *Class Members*. *Class Counsel* may nevertheless communicate with *Plaintiff* and respond to inquiries they receive from *Class Members* during the *Notice Period*. *Defendants* may nevertheless communicate with their current employees in response to inquiries regarding any matter, excluding the *Action,* the *Settlement*, or this *Settlement Agreement*. For any inquiry regarding the *Action,* the *Settlement*, and/or the *Settlement Agreement*, *Defendants* shall advise that *Class Member* to contact *Class Counsel* as directed in the *Class Notice.*

(F)     Upon mailing of the *Notice Packet*, the *Claims Administrator* shall establish a settlement website (or a link on their existing website) to assist in providing *Class Members* with information regarding the *Settlement*. Such website may include (i) the *Complaint*; (ii) the *Settlement Agreement*; (iii) a copy of the *Class Notice*; (iv) any orders entered by the *Court* regarding the *Settlement*; and (v) a list of frequently asked questions and their corresponding answers that is mutually agreed upon by the *Parties*. Such website will be taken down within ten (10) days of the *Settlement* becoming *Final.*

(G)     The *Claims Administrator* will provide to *Defendants' Counsel* and *Class Counsel* at least once every two weeks, a report concerning any objections raised by *Settlement Class* members, the number of *Claim Forms* submitted to date, and the number of *Request for Exclusions* submitted to date. Further, fourteen (14) days before the *Final Approval Hearing*, the *Claims Administrator* will provide *Defendants' Counsel* and *Class Counsel* with a cumulative report detailing any objections received from *Settlement Class* members.

**4.9    Objections.** Only *Settlement Class* members may object to the Settlement. To object to the *Settlement*, the individual must send a written objection to the *Claims Administrator* no later than the *Bar Date*. The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection. Members of the *Settlement Class* who wish to object and be represented by counsel will do so at their own expense. No *Settlement Class* member will have any claim to any part of the *Settlement Amount* based, in whole or in part, on their retention of outside counsel. Should the *Claims Administrator* receive any objection, it will promptly notify *Defendants' Counsel* and *Class Counsel* and will provide each with the contact information for the objecting *Settlement Class* member.

**4.10   Opt-Out/Request for Exclusion.**

(A)     For a *Class Member* to exclude himself or herself from the Settlement ("opting-out"), he or she must write and submit a *Request for Exclusion.* The *Parties* stipulate and agree that the following shall also constitute a valid *Request for Exclusion:* if a *PA Class Member* writes the *Claims Administrator* a letter that states: "I request to be excluded from the settlement in *Carrozza v. McKenzie Brew House, Inc., et al.,* Civil Action No. 22-3291 (E.D. Pa.). I affirm that I was employed by Defendants as a Tipped Employee on one or more days between

August 18, 2019 and October 31, 2022 at one or more of Defendants' Restaurants." The *PA Class Member* who wishes to opt-out must also include his or her full name, address, and telephone number. *PA Class Members may not* exclude themselves by telephone, fax, or email.

(B)     All *Requests for Exclusion* must be submitted by the *Bar Date*.

(C)     The date of submission is deemed to be the earlier of (i) the date the form is deposited in the U.S. Mail, postage pre-paid, as evidenced by the postmark; or (ii) the date the form is received by the *Claims Administrator*.

(D)     Any *Class Member* who submits a timely and valid *Request for Exclusion* will not (i) be bound by any orders or judgments entered in this *Litigation*; (ii) be entitled to benefits or relief under this *Settlement Agreement*; (iii) gain any rights by virtue of this *Settlement Agreement*; (iv) be bound by any releases contained in this *Settlement Agreement*; or (v) be entitled to object to the *Settlement* or appeal from any order of this *Court*.

(E)     Upon receipt of a *Request for Exclusion*, the *Claims Administrator* will notify *Class Counsel* and *Defendants' Counsel* and will provide *Class Counsel* with such individual's last known telephone number.

(F)     If a fully completed and properly executed *Request for Exclusion* is not received by the *Claims Administrator* from a *Class Member* by the *Bar Date*, then that *Class Member* will be deemed to have forever waived his or her right to opt-out of the *Settlement Class*.

If a *Class Member* submits both a timely *Claim Form* and a timely *Request forExclusion*, the *Claims Administrator* will promptly notify and send copies of the *Claim Form* and the *Request for Exclusion* to both *Class Counsel* and *Defendants' Counsel* and will provide *Class Counsel* with such individual's last known telephone number. The *Claims Administrator* will attempt to contact that individual to ascertain his or her intent. If those efforts areunsuccessful, whichever document was mailed later will govern, and if both documents were mailed simultaneously, or the sequence of mailings cannot be determined, then the *Claim Form* will govern.

**4.11    Final Approval.**

(A)     *Plaintiff* will file a motion seeking final approval of the *Settlement* ("Final Approval Motion") with the *Court* in accordance with the *Court's* scheduling order. In the Final Approval Motion, *Plaintiff* will request that the *Court* determine, at or after the *Final Approval Hearing* (a) whether to enter a *Final Approval Order*, substantially in the form attached as Exhibit C, granting final approval of the *Settlement*, dismissing the *Action* with prejudice and entering judgment pursuant to Federal Rule of Civil Procedure 54(b); (b) whether the distribution of the *Settlement Amount* set forth in this *Settlement Agreement*

should be approved or modified; (c) the amount of legal fees and expenses to be awarded to *Class Counsel* as contemplated by Section of this *Settlement Agreement*; and (d) the amount of *Service Payment*, if any, to be awarded to the *Plaintiff*.

(B)     The *Final Approval Motion* will ask the *Court* to (a) approve this *Settlement Agreement*; (b) certify the *Settlement Class*; and (c) approve and enforce the Released Claims as set forth in Section 5 of this Agreement.

(C)     At the *Final Approval Hearing*, *Plaintiff* and *Defendants* will request that the *Court* rule on any Objections to the *Settlement* by any *Settlement Class* members and find that the *Settlement* is fair, reasonable and adequate, and enter the *Final Approval Order*.

(D)     The *Parties* agree to support entry of the *Final Approval Order*, including supporting the *Settlement* through any *Review Proceeding*. *Defendants* will not take any position with respect to *Class Counsel's* fee and expense request or *Plaintiff's Service Payment*, so long as disposition of those matters is substantially in accordance with the provisions of this *Settlement Agreement*. The *Parties* otherwise covenant and agree to reasonably cooperate with one another and to take all actions reasonably necessary to effectuate the *Settlement Agreement* and to obtain a *Final Approval Order*.

**4.12    Distribution of *Settlement Payments* to *Participating Settlement Class Members*.**

(A)     By the deadlines set forth in Section 3.6, *Defendants* will provide the *Claims Administrator* with the *Settlement Amount*.

(B)     The *Claims Administrator* will mail *Settlement Payments* to the last known address of *Participating Settlement Class Members* within fifteen (15) calendar days of receiving the *Settlement Amount*.

(C)     The *Parties* agree that each *Settlement Payment* to be issued to each *Participating Settlement Class Member* will be accounted for as follows: (i) fifty percent (50%) will be allocated to the claims asserted in the *Action* for alleged unpaid wages and other alleged wage-related claims, and (ii) fifty percent (50%) will be allocated to the claims asserted in the *Action* for alleged liquidated damages, penalties, interest, and other relief. To the extent practical, one *Settlement Payment* will be sent to a *Participating Settlement Class Member* and that payment will indicate the amount allocable as alleged (i) unpaid wages or (ii) liquidated damages/other relief.

(1)     The portion of each *Settlement Payment* allocated to claims for alleged unpaid wages and other alleged wage-related damages will be subject to all required employee payroll taxes and deductions (*e.g.*, federal income taxes, state income taxes, employee's share of FICA taxes, and other state-specific

statutory deductions) and other required deductions set forth within *Defendants'* payroll records (e.g., garnishments, tax liens, child support).

(2)     The portion of each *Settlement Payment* t allocated to alleged liquidated damages and other relief will be characterized as non-wage income to the recipient and shall not be subject to any withholdings. The *Claims Administrator* will report the wage parts to each *Participating Settlement Class Member* on an IRS Form W-2 and the non-wage part on an IRS Form 1099.

(3)     The *Claims Administrator* will be responsible for issuing the settlement checks, less required withholdings and deductions, to each *Participating Settlement Class Member* and mailing the *Settlement Checks*, W-2s and 1099s to the *Participating Settlement Class Members*. To the extent feasible, the *Claims Administrator* shall issue one check to each *Participating Settlement Class Member* comprising the entirety of that individual's portion of the *Settlement Amount*.

(D)     The back of each check distributed to *Participating Settlement Class Members* will state that "the check must be cashed within one-hundred eighty days (180) days or it will become void."

(1)     If any *Settlement Check* is not negotiated in the one-hundred eighty (180) day period, that *Settlement Check* will be voided, and the *Claims Administrator* will place a stop-payment on the check. *Participating Settlement Class Members* with such voided checks will have irrevocably waived any right in or claim to a *Settlement Payment*, but the *Settlement Agreement* and all releases relating to their Released Claims will nevertheless be binding upon them. Any unclaimed funds resulting from such voided Settlement Checks shall be part of the *Cy Pres Distribution*.

(E)     Neither *Defendant*, *Defendant's Counsel*, *Class Counsel*, *Plaintiff*, nor the *Claims Administrator* will have any liability for lost or stolen checks, for forged signatures on checks, or for unauthorized negotiation of any checks funded by any portion of the *Settlement Amount*.

(F)     Without limiting the foregoing, if a *Participating Settlement Class Member* notifies the *Claims Administrator* that he or she believes that his or her *Settlement Check* has been lost or stolen, the *Claims Administrator* will immediately notify counsel for the *Parties* and stop payment on any such check.

(1)     If the *Settlement Check* in question has not been negotiated before the stop payment order, the *Claims Administrator* will issue a replacement check, from which the fees, if any, associated with the stop payment order will first be deducted. The *Participating Settlement Class Member* will have an

17

additional thirty (30) calendar days to negotiate the re- issued check from the date of re-mailing.

(2)     If any *Settlement Check* is not negotiated in that period of time, that *Settlement Check* will be voided. The funds from said *Settlement Check* will be considered part of the *Cy Pres Distribution*.

(G)     In addition to the *Settlement Amount*, *Defendants* will be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to *Defendants'* share of the FICA and FUTA taxes, with respect to the amounts treated as wages. The *Claims Administrator* will calculate the employer share of taxes and provide *Defendants* with the total employer tax contributions. *Defendants* will deposit with the *Claims Administrator* the calculated employer tax contributions before the mailing of the *Settlement Payments* to *Participating Settlement Class Members*. *Defendants* shall have the right to dispute the *Claims Administrator*'s tax calculations. *Defendants'* contesting of said tax calculations shall in no way impede the payment of any and all amounts required under this *Settlement Agreement*. Further, *Defendants* shall indemnify and hold harmless *Plaintiff* and *Class Counsel* for any and all claims arising from or related to *Defendants'* disputing of the *Claims Administrator's* tax calculations.

(H)     *Plaintiff*, *Defendants*, *Class Counsel*, and *Defendants' Counsel* do not intend this *Settlement Agreement* to constitute legal advice relating to the tax liability of any *Settlement Class Member*. To the extent that this *Settlement Agreement*, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties. Further, *Plaintiff*, *Defendants*, *Class Counsel*, and *Defendants' Counsel* have provided nor will provide any *Settlement Class* member with any advice regarding the tax consequences of this *Settlement Agreement*.

**4.13**  ***Cy Pres Distribution.*** If any portion of the *Settlement Amount* becomes, by operation of this *Settlement Agreement*, subject to a *Cy Pres Distribution*, the *Claims Administrator* shall distribute said funds to the recipient selected by the *Court* and set forth in the *Final Approval Order*. The *Parties* shall jointly propose three potential *cy pres* recipients from which the *Court* may, if it so chooses, select from.

**4.14**  **Fees and Expenses Borne By *Defendant*.** *Defendants* will bear sole responsibility for *Defendants' Counsel's* fees, expenses, and costs, as well as the fees, expenses, and costs of any other counsel who represented them in this *Action*. Further, *Defendants* will bear soleresponsibility for all fees and costs associated any and all fees and expenses associated with their performance of terms under this *Settlement Agreement*, as well as all fees and costs associated with dissemination of any notice required by *CAFA* if *Defendants* deem such notice necessary. In addition, *Defendants* will bear sole responsibility for the payment of the employer's portion of payroll taxes regarding the part of the *Settlement Payments*

attributable to wages. Should this *Settlement* become *Final*, under no circumstances whatsoever shall any portion of the *Settlement Amount* revert to *Defendants.*

(A) Should this *Settlement* not become *Final* for any reason, *Defendants* and *Class Counsel* will each be equally responsible for any fees or expenses incurred by the *Claims Administrator*.

**4.15** ***Class Counsel's* Fees and Costs.**

(A) *Class Counsel* may make an application to the *Court* for an award of *Plaintiff's Counsel's* fees in an amount not to exceed one-third of the *Settlement Amount*, plus reasonable expenses as awarded by the *Court*. Such application will be filed in connection with the *Parties' Final Approval Motion*.

(B) If the *Court* rules that any amount requested by *Class Counsel* for attorneys' fees, expenses or costs is excessive and reduces the same, only the reduced amount will be deemed to be *Class Counsel's* fees and costs for purposes of this *Settlement Agreement*. Any amounts not awarded by the *Court* shall be redistributed among *Participating Class Members* as part of the *Net Settlement Amount*. Under no circumstances shall any portion of the *Settlement Payment* return to *Defendants* if the *Settlement* becomes *Final*.

(C) As soon as practicable after receiving the *Settlement Amount*, the *Claims Administrator* will wire transfer the amount representing *Class Counsel's* attorneys' fees and expenses approved by the *Court* to *Class Counsel*.

(D) Before any payment of any amount designated as *Class Counsel's* fees and costs, *Class Counsel* will provide the *Claims Administrator* with allinformation necessary to effectuate such payments (*e.g.,* a fully executed IRS Form W-9). *Class Counsel* will be issued an IRS Form 1099 for their award of *Class Counsel's* fees and costs.

(E) Should the *Settlement* not become *Final*, *Class Counsel* will, within five (5) days of receiving such request, promptly return all sums distributed as attorneys' fees and expenses to *Defendants*.

(F) Payment of *Class Counsel's* fees and costs as set forth in this *Settlement Agreement* and the *Court's Final Approval Order* will constitute full and final satisfaction of any and all obligations by *Defendants* to pay any person, attorney or law firm (including but not limited to *Class Counsel*) for attorneys' fees, expenses or costs incurred on behalf of the *Settlement Class* and will relieve the *Released Persons* of any other claims or liability to any person for any attorneys' fees, expenses, and costs to which any person may claim to be entitled on behalf of the *Settlement Class* for this *Action*. *Defendants* will have no additional liability to *Plaintiff's Counsel* for fees and costs, including without limitation, administrative costs, expert fees and costs, or attorneys' fees and costs.

**4.16**    *Service Payment.*

(A)    *Class Counsel* may also make an application to the *Court* for a one-time *Service Payment* award to *Plaintiff*, in recognition of the work and services Ms. Carrozza contributed to the case including, but not limited to, meetings with *Plaintiff's Counsel*, assumption of risks, serving as a class representative, and related activities (including assisting with discovery and helping counsel prepare for the settlement conference, as well as attending the settlement conference herself). The *Service Payment* will not exceed Five Thousand dollars ($5,000.00). The final amount of the *Service Payment* will be determined by the *Court*. Any amount not awarded by the *Court* shall be redistributed among *Participating Class Members* as part of the *Net Settlement Amount*.

(B)    The *Claims Administrator* will make the *Service Payment* to *Plaintiff* in the amount approved by the *Court* within the same time period for distributing *Settlement Payment* amounts to the *Participating Settlement Class Members*.

The *Service Payment* will be treated as non-wage income, and the *Claims Administrator* will issue a Form 1099 to *Plaintiff* reflecting the value of the payment.

**5.**    **RELEASE OF CLAIMS; ASSIGNMENT.**

**5.1**    **Release of Claims.**

(A)    Effective as of the *Final Effective Date*, the Releasing Persons will be deemed to forever and fully release and discharge *Defendants*, and release and hold harmless the Released Persons, as follows (collectively "Released Claims"):

(1)    *Settlement Class Members* shall release (a) all claims of any kind related to unpaid wages, unpaid minimum wages, unpaid straight time, willful refusal to pay wages, untimely payment of wages, unpaid final wages, unpaid overtime, missed, late, or short meal and rest breaks under any legal theory, failure to record missed meal and rest breaks, recordkeeping, expense reimbursement, and improper deductions; (b) all penalties (including but not limited to civil and statutory penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution and equitable relief, or additional damages that arise from or relate to the claims described in (a) under any applicable law or legal theory; (c) any damages, premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting based on or related to the claims described above in (a) or (b), including claims or derivative claims, including any claims arising under the Pennsylvania Minimum Wage Act, 43 P.S. § 333 et seq., and Pennsylvania Wage Payment Collection Law, 43 P.S. § 260 et seq., arising between August 18, 2019 through October 31, 2022, even if presently unknown or un-asserted (the "PA Released Claims").

(2)    *Settlement Class Members* that are also *Participating Settlement Class Members*, release *Defendants* from any and all claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. arising between August 18, 2019 through October 31, 2022, even if presently unknown or un-asserted (the "FLSA Released Claims").

**5.2**    All members of the *Settlement Class and Participating Class Members* will be bound by the terms and conditions of this *Settlement Agreement*, the *Final Approval Order*, the judgment, and the releases set forth herein.

**5.3**    **Scope of Releases.** The release and discharge set forth in Section 5 will not include the release or discharge of any rights or duties of the *Parties* arising out of this *Settlement Agreement*, including the express warranties and covenants contained herein.

**5.4**    **No Assignment.** *Plaintiff* represents and warrants that she has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any part thereof or interest therein, including, but not limited to, any interest in the *Action*, or any related action.

**6.**    <u>**NON-ADMISSION OF LIABILITY.**</u>

**6.1**    By entering into this *Settlement Agreement*, *Defendants* in no way admit any violation of law or any liability whatsoever.

**6.2**    Likewise, by entering into this *Settlement Agreement*, *Defendants* in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Settlement of the *Action*, negotiation and execution of this *Settlement Agreement*, and all acts performed or documents executed pursuant to or in furtherance of this *Settlement Agreement* or the *Settlement* (a) are not evidence of any wrongdoing or liability on the part of *Defendants* or of the truth of any of the factual allegations in the *Complaint* filed in the *Action*; (b) are not an admission or evidence of fault or omission on the part of *Defendants* in any civil, criminal, administrative or arbitral proceeding; and (c) are not an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this *Settlement Agreement*.

**7.**    <u>**TERMINATION.**</u>

**7.1**    **Grounds for Settlement Termination.** Any *Party* may terminate the *Settlement Agreement* if the *Court* declines to enter the *Final Approval Order* or judgment in the form submitted by the *Parties*, or if a Court of Appeals reverses the entry of a *Final Approval Order* or judgment. Additionally, the following events are also grounds for termination:

(A)    *Plaintiff* may terminate this *Settlement Agreement* should the *Claims Administrator* determine that there is a material deviation in the *Total Hours* pursuant to Section 4.6.

(B)    Either *Party* may terminate this *Settlement Agreement* should a material condition set forth in Section 3 not be met or waived by the other *Party*.

(C)    *Plaintiff* may terminate this *Settlement Agreement* should one or more of the *Defendants* file for bankruptcy prior to the *Final Effective Date.*

(D)    In the event that *Defendants* declare bankruptcy prior to disbursement of the *Settlement Amount* to the *Participating Settlement Class Members* and any bankruptcy trustee seizes any portion of the *Settlement Amount*, any releases granted by the *Releasing Parties* shall be void irrespective of whether *Plaintiff* has exercised her right to terminate.

(E)    *Defendants* may terminate this *Settlement Agreement* if more than five percent (5%) of the *PA Class Members* opt-out of this *Settlement* by filing timely *Requests for Exclusion*.

7.2    **Procedures for Termination.** To terminate this *Settlement Agreement* as specified above, the terminating *Party* will give written notice to the other *Party* no later than fourteen (14) calendar days after the terminating *Party* learns that the applicable ground for termination has been satisfied.

7.3    **Effect of Termination.**

(A)    Should this *Settlement Agreement* be terminated pursuant to Section 7, this *Settlement Agreement* will not be offered, received, or construed as an admission of any kind as to liability, damages, whether any class or collective is certifiable, or in any other matter by any *Party*. Neither the *Settlement Agreement*, any motions filed, settlement proposals exchanged by the *Parties*, nor Orders entered pursuant to the *Settlement Agreement*, will constitute an admission, finding or evidence that any requirement for representative litigation or certification as a class or collective action has been satisfied in this *Action* or any other action, except for the limited settlement purposes pursuant to the terms of the *Settlement Agreement*.

(B)    If this *Settlement Agreement* is canceled, rescinded, terminated, voided, or nullified, or the settlement of the *Action* is barred by operation of law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court of competent jurisdiction,

(1)    the *Settlement Agreement* will have no force or effect, and no *Party* will be bound by any of its terms with respect to the terminating *Parties*;

(2)    *Defendants* will have no obligation to make any payments to *Plaintiff*, any *Participating Settlement Class Member*, or *Class Counsel*, except that *Defendants* will be responsible for paying one-half of the *Claims Administrator's* fees and expenses for services rendered up to the date the *Claims Administrator* is notified that the *Settlement* has been terminated.

In such an event, *Class Counsel* shall be responsible for the other half of the *Claims Administrator's* fees and expenses. All other monies remaining from the *Settlement Amount* shall revert to *Defendants*; and

(3)     any settlement class certified by the *Court* will be deemed decertified should the *Settlement Agreement* be terminated, and *Defendants* will retain the right to challenge the certification of any class proposed by *Plaintiff.*

## 8.     <u>MISCELLANEOUS.</u>

**8.1     Parties' Authority.**

(A)     The signatories hereby represent that they are fully authorized to enter into this *Settlement Agreement* and bind the *Parties* hereto to the terms and conditions hereof.

(B)     The entity or individual signing this *Settlement Agreement* on behalf of *Defendants* represents and warrants that they have authority to sign on behalf of all *Defendants* and, accordingly bind all *Defendants* to this *Settlement Agreement*.

(C)     The *Class Notice* will advise all *Class Members* of the binding nature of the release, and that the release will have the  same  force and effect upon members of the *Settlement Class* as if the *Settlement Agreement* were executed by each member of the *Settlement  Class.*

**8.2     Advice of Counsel.** In entering into this *Settlement Agreement*, each *Party* represents and warrants that they have relied upon the advice of their attorneys, that they have completely read the terms of this *Settlement Agreement*, and that the terms of this *Settlement* have been explained to them by their attorneys. Each *Party* further represents and warrants that it fully understands and voluntarily accepts the terms of the *Settlement*.

**8.3     Admissibility.** This *Settlement Agreement* will be inadmissible as evidence in any proceeding, except as necessary to approve, interpret, or enforce this *Settlement Agreement*.

**8.4     Severability.** If any court with original or appellate jurisdiction over this *Action* issues a *Final* determination that any part of this *Settlement Agreement* is not enforceable, the *Parties* may (but will not be required to) jointly agree in writing to modify this *Settlement Agreement* to conform with such determination.

**8.5     Notices.** Any notice, demand or other communication under this *Settlement Agreement* (other than the *Class Notice* or other notices given at the direction of the *Court*) will be in writing and will be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid) or delivered by reputable express overnight courier, with a copy by email.

IF TO *PLAINTIFF* OR THE *SETTLEMENT CLASS*:

CONNOLLY WELLS & GRAY, LLP
Gerald D. Wells, III
Email: gwells@cwglaw.com
101 Lindenwood Drive, Suite 225 Malvern, PA 19355
Telephone: (610) 822-3702

IF TO *DEFENDANTS*:

MORGAN, LEWIS & BOCKIUS LLP
Eric C. Kim
Email: Eric.kim@morganlewis.com
1701 Market Street, Philadelphia, PA 19103
Telephone: 215-963-5652

**8.6** **Cooperation between the *Parties*; Further Acts.** The *Parties* will cooperate fully with each other and will use their best efforts to obtain the *Court's* approval of this *Settlement Agreement* and all of its terms. Each of the *Parties*, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this *Settlement Agreement*.

**8.7** **Entire Agreement.** This *Settlement Agreement* constitutes the entire agreement between the *Parties* with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the *Parties*, including the Memorandum of Understanding executed by the *Parties'* respective counsel on June 14, 2023, will be deemed merged into this *Settlement Agreement*.

**8.8** **Binding Effect.** This *Settlement Agreement* will be binding upon the *Parties* and, with respect to *Settlement Class* members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**8.9** **Arm's Length Transaction; Materiality of Terms.** The *Parties* have negotiated all the terms and conditions of this *Settlement Agreement* at arm's length. All terms and conditions of this *Settlement Agreement* in the exact form set forth in this *Settlement Agreement* are material to this *Settlement Agreement* and have been relied upon by the *Parties* in entering into this *Settlement Agreement*.

**8.10** **Captions.** The captions or headings of the sections and paragraphs of this *Settlement Agreement* have been inserted for convenience of reference only and will have no effect upon the construction or interpretation of any part of this *Settlement Agreement*.

**8.11** **Construction.** The determination of the terms and conditions of this *Settlement Agreement* has been by mutual agreement of the *Parties*. Each party participated jointly in the drafting of this *Settlement Agreement*, and therefore the terms and conditions of this

*Settlement Agreement* are not intended to be, and will not be, construed against any party by virtue of draftsmanship.

8.12    **Governing Law.** This *Settlement Agreement* will in all respects be interpreted, enforced and governed by and under the laws of Pennsylvania, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law will govern.

8.13    **Continuing Jurisdiction.** The *Court* will retain jurisdiction over the interpretation and implementation of this *Settlement Agreement* as well as any and all matters arising out of, or related to, the interpretation or implementation of this *Settlement Agreement* and of the settlement contemplated thereby. The *Court* will not have jurisdiction to modify the terms of the *Settlement Agreement* or to increase *Defendants'* payment obligations hereunder without the *Parties'* express agreement.

8.14    **Waivers, Modifications, Amendments to be in Writing.** No waiver, modification or amendment of the terms of this *Settlement Agreement*, whether purportedly made before or after the *Court's* approval of this *Settlement Agreement*, will be valid or binding unless in writing, signed by or on behalf of all *Parties* and then only to the extent set forth in such written waiver, modification or amendment, subject to any required *Court* approval. Any failure by any *Party* to insist upon the strict performance by the other party of any of the provisions of this *Settlement Agreement* will not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this *Settlement Agreement*, and such party, notwithstanding such failure, will have the right thereafter to insist upon the specific performance of any and all of the provisions of this *Settlement Agreement*.

8.15    **When Agreement Becomes Effective; Counterparts.** This *Settlement Agreement* will become effective upon its execution. The *Parties* may execute this *Settlement Agreement* in counterparts, and execution in counterparts will have the same force and effect as if *Plaintiff* and *Defendants* had signed the same instrument.

8.16    **Confidentiality; Restrictions on Communications.**

   (A)    The *Parties* agree that they will each not publicize the negotiations with respect to the *Settlement Agreement.* The *Parties* and their respective counsel agree that they will not issue a press release or hold any press conferences or initiate contact with a member of the press, about this case and/or the amount or terms of the *Settlement*, the settlement documents, settlement negotiations or settlement communications. If any of the *Parties* are contacted by the press about the *Settlement*, they will respond only that the case has been resolved.

   (B)    The *Parties* further agree that they shall not encourage or solicit *Settlement Class Members* to opt-out or object to this *Settlement.*

   (C)    Nothing in this *Settlement Agreement* shall prevent counsel for either of the *Parties* from communicating with the *Court* as may be required to carry out the

terms of this *Settlement* and/or fulfill their ethical responsibilities under the *Settlement* and to their respective clients.

(D)    Nothing in this *Settlement Agreement* shall prevent *Class Counsel* from communicating with *Settlement Class Members* as may be required to carry out the terms of this *Settlement* and/or fulfill their ethical responsibilities under the *Settlement* and to their client and/or members of the *Settlement Class* which they represent.

(E)    Nothing in this *Settlement Agreement* shall prohibit *Plaintiff* from disclosing information concerning payments made to her to members of her immediate family and tax advisors. In addition*,* nothing shall prohibit or restrict *Plaintiff* from responding to any inquiry about this *Settlement* or its underlying facts and circumstances.

(F)    Nothing in this *Settlement Agreement* shall prevent any of the *Defendants* from disclosing the *Settlement* and its terms for accounting or public filing purposes, or to otherwise comply with any public reporting duties. If, however, prior to the *Final Effective Date,* any of the *Defendants* is contacted by a *Tipped Employee* inquiring as to any aspect of the *Settlement, Defendants* shall direct such individual to contact *Class Counsel.* Further, *Defendants* shall not initiate any communication regarding any aspect of this *Settlement* with any *Tipped Employee* prior to the *Final Effective Date.* Other than the foregoing, nothing in this *Settlement Agreement* shall otherwise prohibit or impede any *Defendants'* communication with any current *Tipped Employee* regarding any aspect of their employment.

(G)    Further, nothing in this *Settlement Agreement* will prohibit or restrict such disclosure as is required by law or as may be necessary for the prosecution of claims relating to the performance or enforcement of this *Settlement Agreement.*

## 8.17    Additional Stipulations.

(A)    *Plaintiff* represents, stipulates and agrees that, as of the date of the execution of this *Settlement Agreement,* she is unaware of any claims she may have against any of the *Defendants* other than those asserted in the *Action.*

(B)    *Defendants* represent, stipulate, and agree that, as of the date of the execution of this *Settlement Agreement*, they are unaware of any claims they may have against *Plaintiff* or *Class Counsel* arising out of or relating to the prosecution and/or resolution of the *Action*.

**[SIGNATURES ON FOLLOWING PAGE]**

**[SIGNATURES ON FOLLOWING PAGE]**

Dated: _8/24/2023_

FOR DEFENDANTS:

By: _WM J Mangan_

Printed Name: _William. J MANGAN_

Dated:_____

FOR DEFENDANTS:

By:_____

Printed Name:_____

Title:_____

Dated: August 24, 2023_____

APPROVED AS TO FORM BY
DEFENDANTS' COUNSEL:

/s/ Eric Kim (with express permission)_____
Eric Kim
MORGAN, LEWIS & BOCKIUS LLP

Dated:_____

CHANTEL CARROZZA, on behalf of herself and
all others similarly situated:

_____

Dated:_____

APPROVED AS TO FORM BY
PLAINTIFF'S COUNSEL:

_____
Gerald D. Wells, III
CONNOLLY WELLS, & GRAY, LLP

FOR DEFENDANTS:

Dated:_____

By:_____

Printed Name:_____

Title:_____

APPROVED AS TO FORM BY
DEFENDANTS' COUNSEL:

Dated:_____

_____
Eric Kim
MORGAN, LEWIS & BOCKIUS LLP

CHANTEL CARROZZA, on behalf of herself and
all others similarly situated:

Dated: 8-20-23

_____

APPROVED AS TO FORM BY
PLAINTIFF'S COUNSEL:

Dated:_____                     FOR DEFENDANTS:

                                                By:_____

                                                Printed Name:_____

                                                Title:_____

                                                APPROVED AS TO FORM BY
                                                DEFENDANTS' COUNSEL:

Dated:_____                     _____
                                                Eric Kim
                                                MORGAN, LEWIS & BOCKIUS LLP

                                                CHANTEL CARROZZA, on behalf of herself and
                                                all others similarly situated:

Dated:_____                     _____

                                                APPROVED AS TO FORM BY
                                                PLAINTIFF'S COUNSEL:
Dated:_August 21, 2023_____                    _____
                                                Gerald D. Wells, III
                                                CONNOLLY WELLS, & GRAY, LLP

27